# 24-1908

---

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 24-1908

———◄•••►———

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

NEIL PHILLIPS, also known as Sealed Defendant 1,

*Defendant-Appellant.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## OPPOSITION TO PETITION FOR REHEARING EN BANC

JAY CLAYTON,
*United States Attorney for the
Southern District of New York,
Attorney for the United States
of America*
26 Federal Plaza, 37th Floor
New York, New York 10278
(212) 637-2200

THOMAS S. BURNETT,
ANDREW M. THOMAS
NATHAN REHN,
  *Assistant United States Attorneys,
    Of Counsel*

# TABLE OF CONTENTS

PAGE

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Point I—En Banc Review of the Extraterritoriality
    Decision is Unwarranted . . . . . . . . . . . . . . . . . . 3

    A.  The Opinion Correctly Rejected Phillips's
        Extraterritoriality Arguments. . . . . . . . . . . 3

    B.  The Opinion Correctly Affirmed the Jury's
        Evaluation of the Facts. . . . . . . . . . . . . . . 5

    C.  Phillips's Policy Arguments Do Not Warrant
        En Banc Review. . . . . . . . . . . . . . . . . . . . . 8

Point II—En Banc Review of Scienter for Market
    Manipulation is Unwarranted . . . . . . . . . . . . . . 9

    A.  The Opinion Correctly Rejected Phillips's
        Sole-Intent Arguments. . . . . . . . . . . . . . . . 9

    B.  Phillips Ignores Decades of Relevant Circuit
        Precedent. . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.  Phillips's Policy Arguments Do Not Merit
        En Banc Review. . . . . . . . . . . . . . . . . . . . . 14

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ii

PAGE

# TABLE OF AUTHORITIES

*Cases*:

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007) . . . . . . . . . . . . . . . 12

*GFL Advantage Fund v. Colkitt*,
 272 F.3d 189 (3d Cir. 2001) . . . . . . . . . . . . . . 13

*Markowski v. SEC*,
 274 F.3d 525 (D.C. Cir. 2001) . . . . . . . . . . . . 13

*Morrison v. Nat'l Australia Bank*,
 561 U.S. 247 (2010). . . . . . . . . . . . . . . . . . . . . . 5

*SEC v. Vali Mgmt. Partners*,
 2022 WL 2155094 (2d Cir. 2022) . . . . . . . 12, 13

*Set Capital LLC v. Credit Suisse Grp., A.G.*,
 996 F.3d 64 (2d Cir. 2021) . . . . . . . . . . . . . . . 12

*SIFMA v. CTFTC*,
 67 F. Supp. 3d 373 (D.D.C. 2014) . . . . . . . . . . . 3

*United States v. Mulheren*,
 938 F.2d 364 (2d Cir. 1991) . . . . . . . . . . . . 11, 12

*United States v. Phillips*,
 155 F.4th 102 (2d Cir. 2025). . . . . . . . . . . . . . . . 1

*United States v. Royer*,
 549 F.3d 886 (2d Cir. 2008) . . . . . . . . . . . . . . . 12

iii

PAGE

*United States v. Technodyne LLC*,
   753 F.3d 368 (2d Cir. 2014) . . . . . . . . . . . . . .  10

*Statutes:*

7 U.S.C. § 2(i) . . . . . . . . . . . . . . . . . . . . . . . . .  3, 4, 5

7 U.S.C. §§ 9(1)  . . . . . . . . . . . . . . . . . . . . . . . . .  3

**Preliminary Statement**

Neil Phillips petitions for rehearing en banc. On October 25, 2023, a jury convicted Phillips of commodities fraud for a scheme in which he manipulated the exchange rate between the United States dollar and the South African rand to trigger a payout on a financial instrument called a one-touch option (the "Option"), which Phillips had purchased using an American prime broker. His fraud caused an American bank to make a $20 million payment to Phillips's hedge fund. On September 3, 2025, this Court unanimously affirmed Phillips's conviction. *United States v. Phillips*, 155 F.4th 102 (2d Cir. 2025) ("Opinion"). The Opinion rejected Phillips's argument that the District Court had improperly instructed the jury on the standard for extraterritorial application of the Commodities Exchange Act ("CEA") and that there was insufficient evidence to apply the CEA to his misconduct. The Opinion also rejected Phillips's argument that the District Court improperly instructed the jury on the meaning of manipulative intent.

In his rehearing petition, Phillips argues that this Court erred in holding that the CEA applied to his conduct because of its significant connection with activities in the United States, and in rejecting his argument that the jury should have been instructed that it had to find that his sole intent in trading was to manipulate. On October 27, 2025, this Court directed the Government to respond to the petition.

1

**Argument**

Under Rule 35 of the Federal Rules of Appellate Procedure, "[a]n en banc or rehearing is not favored and ordinarily will not be ordered unless (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. 35(a). Neither exception is present here.

The application of the CEA to Phillips's crime was consistent with Congress's decision to extend that statute abroad and with international law, and Phillips cites no authority in this Court or any other to the contrary. En banc review of this issue in this case is especially unwarranted because Phillips identifies no legal error in the Opinion and simply challenges the panel's application of the law to these facts.

The instructions on manipulative intent also accorded with decades of precedent in this Court and ensured that Phillips could only have been convicted if he had intent to defraud, did not have a legitimate reason for the trades he placed, and knew what he was doing was unlawful. Moreover, the fact-bound nature of Phillips's arguments and the relative rarity of cases implicating market manipulation or the extraterritorial reach of the CEA also weigh against convening en banc. *See Watson v. Geren*, 587 F.3d 156, 160 (2d Cir. 2009) ("En banc review should be limited generally to only those cases that raise issues of important systemic consequences for the development of the law and the administration of justice.").

2

**Point I**

**En Banc Review of the Extraterritoriality Decision is Unwarranted**

The Opinion correctly held that Phillips's fraudulent scheme fell within the extraterritorial reach of the CEA. Phillips's petition does not even attempt to identify any legal error in the Opinion's articulation of the applicable legal standard, but instead challenges the application of the standard to his case. But the jury, the District Court, and the Opinion reasonably found that the CEA applied to Phillips's conduct. And Phillips's assertions about the Opinion's implications ignore both the panel's consideration of international law and the history of regulation under the CEA.

**A. The Opinion Correctly Rejected Phillips's Extraterritoriality Arguments.**

En banc review is unwarranted because Phillips has not identified any legal error regarding the extraterritorial application of the CEA.

Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act in the wake of the 2008 financial crisis. That Act included new prohibitions against fraud and manipulation in connection with swaps. 7 U.S.C. § 9(1). "Recognizing the interconnected nature of domestic and international swaps trading, Congress [also] provided for the extraterritorial application" of those prohibitions. *SIFMA v. CFTC*, 67 F. Supp. 3d 373, 384 (D.D.C. 2014). It did so through 7 U.S.C. § 2(i), which extends the swap provisions "to activities outside the

3

United States" when "those activities . . . have a direct and significant connection with activities in, or effect on, commerce of the United States."

At trial, the District Court instructed the jury on the "activities" prong of Section 2(i).[1] The District Court explained that foreign conduct has a direct connection when it "directly and immediately affected activity in commerce of the United States without deviation or disruption." (Op. 21-22). The Court further instructed that a "significant connection" meant "the relationship . . . must be of importance," rather than "random, fortuitous, attenuated, or merely incidental." (*Id.*).

In giving that instruction, the District Court rejected Phillips's request to construe the term "significant" to mean activity abroad that "pose[d] a systemic risk to the U.S. financial system." (Op. 22). The Opinion was right to affirm that decision. Phillips's proposed instruction did not square with the text of Section 2(i): The plain meaning of the word "significant" is expansive, and not limited to only those things that could pose a systemic risk to the entire economy. (Op. 27). Phillips's systemic-risk instruction also does not fit with the "activities" prong of Section 2(i), which asks whether *activities* abroad have a direct and significant connection with *activities* in the United States. A systemic-risk instruction would wrongly focus on whether foreign activities had a potentially significant *effect on* the economy, which would

---

[1] The Government did not proceed on the "effects" prong, which applies to "activities outside the United States" that "have a direct and significant . . . effect on[] commerce in the United States."

4

"collapse the distinction" between the "activities" and "effects" prong of Section 2(i). (*Id*.). And Phillips's proposed instruction was incompatible with the CEA's references to "systemically important" activities in other sections. (Op. 28).

In the Petition, Phillips abandons any effort to defend his contrary interpretation. He protests that the presumption against extraterritoriality "limit[s] statutes that have extraterritorial application "to [their] terms." (Pet. 8 (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 265 (2010))). But he ignores that the Opinion recognized that principle and carefully construed the text of the relevant statute. It is Phillips's view of the law that lacks textual support.

**B. The Opinion Correctly Affirmed the Jury's Evaluation of the Facts.**

The District Court and the panel concluded that sufficient evidence supported the jury's decision that Phillips's activities outside the United States had a "direct and significant connection with activities in . . . commerce of the United States." (Op. 34). En banc review of that fact-bound decision is unwarranted.

The trial revealed deep ties between Phillips's crime and activities in the United States. Phillips ran a hedge fund co-located in the United States and London, with United States investors. He and his hedge fund were registered with the Commodity Futures Trading Commission ("CFTC"). Phillips's crime was designed to benefit his fund by triggering the Option payout based on the dollar-rand exchange rate. In the middle of a holiday night, when trading was thin and the market could

5

be more easily distorted, Phillips sold hundreds of millions of dollars to buy rand. As his own words confirmed, Phillips aimed to "trade thru" the Option price so he could trigger a $20 million payment to his hedge fund.

As both the District Court and Opinion explained, two American banks stood on the other side of the Option. (Op. 5-6, 34-45). The victim of Phillips's fraudulent scheme was Morgan Stanley, which had to pay $20 million when Phillips succeeded in triggering the Option. (*Id.*). Further, because Phillips used JPMorgan to broker the Option, JPMorgan would be on the hook for the $20 million if Morgan Stanley did not pay, and the proceeds of the crime passed from Morgan Stanley's New York bank account to Phillips's hedge fund via its New York bank account at JPMorgan. (*Id.*).

The panel properly concluded that "[b]ecause the actual and potential victims of Phillips's manipulative scheme were U.S. financial institutions, a rational jury could have found that the connection between Phillips's conduct and activities in U.S. commerce" was significant, that is "'of importance' and 'integral.'" (Op. 38-39). For one thing, the point of Phillips's crime was to induce the Option counterparty to pay, and that activity occurred in the United States when Morgan Stanley was deceived into paying $20 million from its New York bank account to the United States accounts for Phillips's hedge fund. (Op. 38-45). For another, Phillips used JPMorgan to play a "pivotal role" in his scheme. (*Id.*). Specifically, JPMorgan brokered the Option and its "prime brokerage services and options

6

transacting were both business activities and part of the United States economy."
(*Id.*). Thus, Phillips's crime had a significant connection to JPMorgan's activities in the United States because it used those services in the country, including both as broker for the Option and to process the Option payout, and because JPMorgan bore the risk of loss if Morgan Stanley did not pay on the Option. (*Id.*).

Phillips's argument that $20 million was not a large amount compared to the consolidated assets of Morgan Stanley and JPMorgan is a red herring. Section 2(i)'s "activities" prong asks whether the relationship between the activities overseas and domestically was meaningful, not whether the financial impact of the fraud was large relative to the assets of the victim. For that reason, both the District Court and the Opinion focused on how Phillips's activities related to the activities of Morgan Stanley and JPMorgan in the United States, rather than the value of the Option. Moreover, Phillips's assertion that $20 million is insignificant compared to the banks' assets is just an effort to sneak in the systemic-risk argument. Even if $20 million were relevant for the analysis, the question would be whether the sum is meaningful, not whether it threatened to wipe out a major bank.

Phillips's claim that he could not have foreseen that he might have a United States victim is also no basis for review. Phillips omits that he never requested a foreseeability instruction, and for good reason: There is a presumption that a defendant need not have "knowledge of a jurisdictional element," *United States v.*

7

*Escalera*, 957 F.3d 122, 130 (2d Cir. 2020), and Section 2(i), unlike other extraterritoriality statutes, does not have a term that alters that presumption. What is more, the defendant knew that he was subject to American law because he registered with the CFTC and ran a hedge fund based, in part, in the United States.

**C. Phillips's Policy Arguments Do Not Warrant En Banc Review.**

Finally, Phillips wrongly attempts to suggest that the Opinion is at odds with international law and would result in "international discord." As the Opinion explains, international law recognizes a nation's prerogative to protect those within its borders from fraud. (Op. 39-40). Nor will the Opinion open American courts to a flood of foreign swaps cases. The application of the CEA depends on the specific foreign conduct at issue and the domestic activities to which it is connected. Where, as here, a defendant used an American broker to perpetrate a fraud that victimized an American bank, it was reasonable for the jury—and this Court—to conclude that the fraud had a "significant" connection with activities in the United States.

Moreover, Phillips's sky-is-falling claims portray the Opinion as expanding Section 2(i), when that is not remotely the case. For over a decade, the CFTC has issued regulations applying the CEA's swap provisions overseas. (Gov. Br. 13-15, 23-24). These regulations apply based on the involvement of an American financial institution in the swap, not based on whether the swaps at issue pose a systemic risk to the financial system. (*Id.*). The Opinion's interpretation of the CEA thus comports

8

with the CFTC's longstanding approach. By contrast, if the Opinion had adopted Phillips's view of the law, it would have unsettled many of the regulations that have governed international swap transactions since Dodd-Frank. (Gov. Br. 23-24).

In short, the Opinion correctly rejected Phillips's challenges to the District Court's interpretation of Section 2(i) and to the jury's verdict. En banc review is unwarranted because there was no legal error and Phillips's policy arguments against the Opinion have no basis in law or reality.

**Point II**

**En Banc Review of Scienter for Market Manipulation is Unwarranted**

This Court should also reject Phillips's argument for en banc review of the scienter standard in market-manipulation cases. The Opinion followed longstanding Circuit precedent and rejected Phillip's novel "sole intent" instruction. The Opinion also correctly found that a "sole intent" instruction would not have mattered in this case. And Phillips's policy arguments do not warrant en banc review because they misconstrue the Opinion.

**A. The Opinion Correctly Rejected Phillips's Sole-Intent Arguments.**

The panel correctly rejected Phillips's proposed sole-intent instruction. Such an instruction would have conflicted with statutory text and Circuit precedent.

At trial, Phillips sought to tell the jury that his dollar-rand trades could not be the basis for conviction unless he traded with the "sole intent" to manipulate. The

9

District Court rejected that formulation. Instead, the District Court instructed the jury that, "if but for an intent to deceive, the defendant would not have conducted the transactions [at issue] at the time and the amounts he did, then those transactions were manipulative." (Op. 48-49). The District Court also clarified that if Phillips had "two purposes," one of which was "legitimate," and Phillips would have traded "at the same time and in the same manner for the legitimate purpose, it is not manipulative even if the defendant also had an intent to deceive or to send a false price signal into the market." (*Id.*). On appeal, Phillips argued that the District Court should have required proof that his "sole intent" was to manipulate.

The Opinion was right to reject that argument. The legal failing of Phillips's proposal is simple: Phillips was not entitled to charge the jury with his novel standard "because his proposed sole-intent instruction is inaccurate." (Op. 51). As with many securities and commodities offenses, the relevant portion of the CEA imposes criminal liability for "willful" violations undertaken with *scienter*. (Op. 51-52). As the Opinion observed, the text of the CEA and Rule 180.1(a) "make no mention of sole intent." (*Id.*). The absence of textual support shows Phillips's charge to be incorrect because "when Congress has meant to impose a sole-intent limitation, it has done so expressly." (Op. 51) (quoting *United States v. Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2014)).

10

What is more, the Opinion correctly found that Phillips failed to demonstrate any prejudice from the instruction given. The District Court's "instruction charged the jury with an intent standard virtually indistinguishable from the sole-intent standard Phillips requested." (Op. 19.) That instruction precluded the possibility that Phillips was convicted simply based on an awareness that "his transactions would affect the dollar-rand exchange rate" or where he "honestly believes that his actions were proper," and instead required the jury to evaluate whether Phillips would have traded "at the same time and in the same manner" but for the intent to mislead. (Op. 48-49). The District Court also required the jury to find that Phillips acted with intent to defraud and awareness that his conduct was unlawful. (Op. 66-67). Because these instructions enabled Phillips to make the same arguments that he would have made under his preferred instruction, the Opinion rightly invoked the black-letter principle that "[i]f the substance of a defendant's request is given by the court in its own language, the defendant has no cause to complain." (Op. 50-51).

## B. Phillips Ignores Decades of Relevant Circuit Precedent.

The Petition places great weight on this Court's 1991 decision in *United States v. Mulheren*, in which a panel expressed "misgivings" about whether open-market manipulation violates the securities laws. 938 F.2d 364, 368 (2d Cir. 1991). But Phillips studiously ignores the actual result in *Mulheren*, along with numerous cases addressing market manipulation that this Court has decided since.

11

With respect to *Mulheren* itself, while the decision expressed "misgivings" about a theory of fraud premised on open-market manipulation, this Court did not hold that such a theory was impermissible. *Id.* at 368. This Court also did not address or establish what the scienter standard should be in an open-market manipulation case, much less adopt the sole intent standard that Phillips favors.

Moreover, Phillips ignores that since *Mulheren* there has been more than three decades of decisions recognizing that "[o]pen-market transactions that are not inherently manipulative may constitute manipulative activity when accompanied by manipulative intent." *Set Capital LLC v. Credit Suisse Group AG*, 996 F.3d 64, 77 (2d Cir. 2021); *see also ATSI Communications Inc. v Shaar Fund, Ltd*., 493 F.3d 87, 101 (2d Cir. 2007). As the Opinion observed, these decisions hold that trading combined with willfulness and fraudulent intent is "actionable as a manipulative act" and that "[i]n some cases, such as Phillips's, the intent to deceive or manipulate is the only factor that distinguishes legitimate trading from improper manipulation." (Op. 47-48). And contrary to Phillips's claim that the Opinion is a first-of-its-kind event, this Court has repeatedly affirmed manipulation instructions without a sole-intent requirement. *See, e.g., United States v. Royer*, 549 F.3d 886, 899 (2d Cir. 2008) (approving instruction that "[t]he essential element of manipulation is the deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand"); *SEC v.*

12

*Vali Mgmt. Partners*, 2022 WL 2155094, at *1 (2d Cir. June 15, 2022) (affirming instruction that "in some cases, a defendant's 'scienter,' that is, a defendant's intent to manipulate the securities market, is all that distinguishes legitimate trading from manipulative trading").

The Petition also fails to demonstrate any disharmony with the law in other Circuits that might justify en banc review. Though Phillips asserts that multiple courts "have expressed concern about the criminal prosecution of open-market trades," (Pet. 11), neither of the two civil cases he cites provides support for that assertion. In *Markowski v. SEC*, the District of Columbia Circuit affirmed an SEC finding that the defendants engaged in market manipulation without any inquiry into whether manipulation was their sole intent. 274 F.3d 525, 529 (D.C. Cir. 2001). On the contrary, the court held that defendants could be liable for manipulation even if they had engaged in "real transactions." *Id.* Likewise, in *GFL Advantage Fund, Ltd. v. Colkitt*, the Third Circuit did not endorse a sole intent requirement and recognized that market manipulation can be "achieved through deceptive trading activities." 272 F.3d 189, 205 (3d Cir. 2001). Neither court endorsed a sole-intent instruction or reached a result that conflicts with the Opinion, much less the type of conflict that could warrant en banc review.[2]

---

[2] In the end, the only example of a sole-intent instruction that Phillips offers is *United States v. Tuzman*, where the Honorable Paul G. Gardephe, U.S. District Judge,

13

### C. Phillips's Policy Arguments Do Not Merit En Banc Review.

Phillips last resorts to policy arguments for why this Court should abandon its past precedents and adopt his sole-intent standard, arguing that the current law creates a blurry line between legitimate and illegitimate trading.

Nothing about Phillips's case was blurry. The District Court's instruction ensured that the jury could not convict Phillips without proof of intent to defraud and an awareness that his trading was unlawful. Phillips was convicted under that high standard because the evidence was overwhelming: Phillips was caught on tape discussing his plan to "go fucking lash" the dollar-rand rate to trigger his option, he explicitly told his banker that his "aim" was to achieve a particular price level, and his proffered "legitimate" reason for trading—that he was replacing "delta"—was wildly inconsistent with his actual trading activity. (Op. 12, 55 n.10; *see, e.g.*, SA-204-07, SA-521-24).

Phillips tries to deflect from his own conduct by pointing to the trading of Morgan Stanley and raising a hypothetical about iceberg trading. Neither thought experiment warrants en banc review. Phillips claims that Morgan Stanley's trading

---

instructed the jury that, as to a Section 10(b) count, the jury needed to find that "each defendant agreed to engage in conduct with the sole intent to, one, create a false impression of market activity . . ., and, two, to artificially distort the price . . . rather than for legitimate investment purposes." ECF Doc. 706 at 189, 15 Cr. 536 (PGG) (S.D.N.Y.). The instruction was given on consent of the parties, so the issue was not litigated and no court appears to have followed it since.

14

mirrored his own, but he ignores that the recordings and messages demonstrated that his trading was done with an intent to defraud. Moreover, whether another actor might have engaged in manipulation is irrelevant. The panel rightly concluded that theoretical bad conduct by others was no defense to Phillips's intentional fraud. (Op. 54-55). Pivoting away from the case, Phillips also suggests that, without a sole-intent standard, traders who deploy a trading method called iceberg ordering could run afoul of the law. The Opinion correctly noted, however, that existing law capably empowers juries to distinguish one scenario from the other: "An iceberg order, like any other open-market transaction, is criminal only in light of affirmative evidence of fraudulent intent and willfulness beyond a reasonable doubt." (Op. 51 n.9). There is no reason to convene the full court to address a hypothetical case that the law already equips courts and juries to address.

## Conclusion

For the foregoing reasons, Phillips's petition for en banc review of the Opinion should be Denied.

15